UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRVING FIREMEN'S RELIEF & RETIREMENT FUND,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, et al.,<br><br>Defendants. | Case No. 17-cv-05558-HSG<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND GRANTING DEFENDANTS' MOTIONS TO STAY**<br><br>Re: Dkt. Nos. 57, 58, 60, 63 |

Plaintiff Irving Firemen's Relief & Retirement Fund filed this putative class action on September 26, 2017, asserting one violation of Cal. Corp. Code Sections 25400(d) and 25500 against Uber Technologies Inc. ("Uber") and Travis Kalanick, Uber's former Chief Executive Officer ("CEO") (collectively, "Defendants"). Dkt. No. 1 ("Compl."). On December 22, 2017, Plaintiff filed a first amended complaint. Dkt. No. 50 ("FAC"). The FAC asserts the same statutory violation. *See id.* ¶¶ 157-161.

Currently pending before the Court are Defendants' separately filed motions to dismiss the FAC. *See* Dkt. Nos. 57 ("Kalanick Mot."), 60 ("Uber Mot."). On February 16, 2018, Plaintiff filed an omnibus opposition to Defendants' motions. Dkt. No. 98 ("Opp."). Each Defendant replied on March 9, 2018. Dkt. Nos. 101 ("Kalanick Reply"), 103 ("Uber Reply"). Defendants also filed motions to stay and/or bifurcate discovery. Dkt. Nos. 58 ("Kalanick Stay Mot."), 63 ("Uber Stay Mot."). On February 2, 2018, Plaintiff opposed the stay motions. Dkt. No. 82 ("Stay Opp."). On February 9, Defendants each replied. Dkt. Nos. 86 ("Kalanick Stay Reply"), 88 ("Uber Stay Reply").

On April 19, 2018, the Court held a hearing on the motions. *See* Dkt. No. 117. After carefully considering the parties' arguments at the hearing and as presented in the papers, the

Court granted Defendants' motions to stay discovery pending the Court's ruling on Defendants' motions to dismiss. Dkt. No. 118 ("Stay Order"). In this order, the Court details its reasoning for the Stay Order for the record. The Court also **GRANTS** Defendants' motions to dismiss.[1]

## I. MOTIONS TO DISMISS

### A. Legal Standard

#### i. Rule 12(b)(6) Standard

Federal Rule of Civil Procedure ("Rule") 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

---

[1] The Court sets forth the relevant facts in Part I(B) of this order. The Court does not rely on extrinsic documents submitted by Defendant for this order, and **DENIES AS MOOT** Uber's voluminous request for judicial notice. Dkt. No. 61; *see also Khoja v. Orexigen Therapeutics, Inc.*, No. 16-56069, 2018 WL 3826298, at *7 (9th Cir. Aug. 13, 2018) (detailing this circuit's standard for judicial notice in general and as applied to securities fraud pleadings).

### ii. Heightened Pleading Standards

Section 10(b) of the Securities Exchange Act (SEA) of 1934 provides that it is unlawful "[t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered . . . any manipulative or deceptive device or contrivance . . . ." 15 U.S.C. § 78j(b).[2] Under this section, the Securities and Exchange Commission promulgated Rule 10b-5, which makes it unlawful, among other things, "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b). "To prevail on a claim for violations of either Section 10(b) or Rule 10b-5, a plaintiff must prove six elements: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc.*, 552 U.S. 148, 157 (2008).

At the pleading stage, a complaint alleging claims under section 10(b) and Rule 10b-5 must not only meet the requirements of Rule 8, but must satisfy the heightened pleading requirements of both Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012). Under Rule 9(b), claims alleging fraud are subject to a heightened pleading requirement, which requires that a party "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Additionally, all private securities fraud complaints are subject to the "more exacting pleading requirements" of the PSLRA, which require that the complaint plead with particularity both falsity and scienter. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009). With respect to forward-looking statements, "a defendant will not be liable for a false or misleading statement if it is forward-looking and *either* is accompanied by cautionary

---

[2] Though Plaintiff asserts its securities fraud claim under California law, there is no dispute that the heightened pleading standards of Section 10(b) apply. *See, e.g.*, Mot. at 4. Both Defendants and Plaintiff rely on cases interpreting Section 10(b) of the SEA, and the Court applies these heightened standards in assessing the FAC.

3

language *or* is made without actual knowledge that it is false or misleading. *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1141 (9th Cir. 2017) (quoting *Cutera*, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112-13 (9th Cir. 2010)).

### B. Discussion

Plaintiff defines the putative class to include "[a]ll persons or entities who, directly or indirectly, purchased or committed to purchase (and subsequently closed a binding commitment to purchase) an interest in Uber securities between June 6, 2014 and November 27, 2017." FAC ¶ 151. The gravamen of the FAC is that Uber and Kalanick disseminated false and misleading statements and omissions for "the purpose of inducing the purchase of billions of dollars of Uber securities." *Id.* ¶ 2. The FAC divides Defendants' allegedly fraudulent statements into six categories: (1) growth, *id.* ¶¶ 25-26; (2) legal compliance, *id.* ¶¶ 30-31; (3) competitive spirit, *id.* ¶ 47; (4) ethical culture, *id.* ¶¶ 50-51; (5) self-driving car technologies, *id.* ¶¶ 35-38; and (6) data security, *id.* ¶¶ 41-42, 76-83. Plaintiff claims that the price of Uber securities declined as Uber's various corporate scandals came to light, and class members consequently lost billions of dollars. *Id.* ¶¶ 147-150.

Defendants move to dismiss all of the FAC's claims. The arguments presented in Defendants' motions substantially overlap. The Court turns first to Defendants' contention that Plaintiff fails to state a claim for relief under Rules 8(a) and 9(b).

#### i. Whether Plaintiff States a Claim for Relief

Both Uber and Kalanick argue that the challenged statements are inactionable. Kalanick's motion is limited to whether Plaintiff adequately alleges false or misleading statements and omissions. *See* Kalanick Mot. at 11-20. In its motion, Uber claims not only that Plaintiff fails to adequately plead cognizable false or misleading statements and omissions, but also that Plaintiff does not sufficiently plead loss causation, injury, and scienter. Uber Mot. at 7-23. As a threshold matter, Defendants argue that certain statements are inactionable under the securities laws because they were made outside the relevant period.

##### a. Statements Made Before and After Plaintiff's Purchase of Securities

Uber argues that only those statements made between June 2014 (the beginning of the

4

class period) and January 2016 (when Plaintiff purchased its New Riders securities) are actionable as a matter of law. Uber Mot. at 8. Kalanick makes a similar claim, contending that statements made after Plaintiff last acquired securities in January 2016 are not actionable. Kalanick Mot. at 11-12 ("Such post-acquisition statements cannot form the basis of Plaintiff's securities claim because they could not have affected Plaintiffs' supposed decision to acquire Uber shares or the price at which it allegedly did so."). In response, Plaintiff claims that past false statements are inactionable so long as they remain uncorrected. *See* Opp. at 38.

The Court agrees with Defendants that, as pled, only the challenged statements made between June 2014 and January 2016 are actionable. In *Hanon v. Dataproducts Corp.*, the Ninth Circuit limited actionable statements to those made before the plaintiff purchased the relevant stock. *See* 976 F.2d 497, 501 (9th Cir. 1992) (concluding that the court did not need to determine whether the defendant's statement was misleading because "it was issued after [the plaintiff] bought his stock and thus could not have affected his stock's April 14, 1989 market price or his decision to buy on that date"). In reaching that conclusion, the Court relied on *Williams v. Sinclair* for the proposition that "allegedly fraudulent acts which occur after a plaintiff's purchase of stock cannot form the basis of a section 10(b) claim because the acts were not performed in connection with the purchase or sale of securities." *See id.* (citing 529 F.2d 1383, 1389 (9th Cir. 1975)). In addition, the California Supreme Court has held that "persons who hold stock in reliance upon misrepresentations are totally dependent for redress upon state common law causes of action." *Small v. Fritz Companies, Inc.*, 65 P.3d 1255, 1263 (Cal. 2003). The court continued that these persons "have no remedy under either federal Rule 10b-5 or Corporations Code sections 25000 and 25400, because all of these provisions are limited to suits by buyers or sellers of securities." *Id.* Considering particularly that Plaintiff brings its claim under California law, the Court concludes that statements made after January 2016 are not actionable.

As far as pre-class statements, Plaintiff presents little in the way of binding or persuasive authority to support that, absent a showing of reliance, these representations are actionable. *See* Opp. at 38-39. Courts in this district have found that actionable statements must fall within the class period; the class period here begins in June 2014. *See Hodges v. Akeena Solar, Inc.*, No. C

5

09-02147 JW, 2010 WL 3705345, at *2 (N.D. Cal. May 20, 2010) ("A securities class action defendant is liable only for those statements made during the class period, not statements made before or after the class period."); *In re Clearly Canadian Sec. Litig.*, 875 F. Supp. 1410, 1420 (N.D. Cal. 1995) ("As the class period defines the time during which defendants' fraud was allegedly alive in the market, statements made or insider trading allegedly occurring before or after the purported class period are irrelevant to plaintiffs' fraud claims."); *see also In re Int'l Bus. Machines Corp. Sec. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998) ("A defendant, however, is liable only for those statements made during the class period. . . Plaintiffs could have sought to include this statement in the class period but they did not.") (citation omitted). The Court agrees with those decisions, and considers only those statements made between the beginning of the class period in June 2014 and Defendants' last purchase of securities in January 2016.[3]

### b. Materially False or Misleading Statements and Omissions

Uber and Kalanick argue that the statements challenged in the FAC are not materially false or misleading. To survive this ground for dismissal, Plaintiff must "identify[] the statements at issue and set[] forth what is false or misleading about the statement and why the statements were false or misleading at the time they were made." *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012).

With regard to falsity, that element is alleged "when a plaintiff points to [the] defendant's statements that directly contradict what the defendant knew at that time." *Khoja*, 2018 WL 3826298, at *15. A statement is misleading "if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists." *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1275 (9th Cir. 2017) (quotations and alterations omitted). Misleading statements "must be 'capable of objective verification.'" *Id.* (quoting *Oregon Pub. Employees Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014)). "For example, 'puffing'—expressing an opinion rather than a knowingly false statement of fact—is not misleading." *Id.*

---

[3] Even if the Court considers statements made outside of this period, Plaintiff fails to sufficiently plead that those statements are materially false or misleading for the reasons set forth in Part I(B)(i)(b). *See also* Uber Mot. at 8 n.8.

6

"Even if a statement is not false, it may be misleading if it omits material information." *Khoja*, 2018 WL 3826298, at *15. "[A]n omission is material when there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information available." *Markette v. XOMA Corp.*, No. 15-CV-03425-HSG, 2017 WL 4310759, at *7 (N.D. Cal. Sept. 28, 2017) (internal quotations and citations omitted). Omissions are actionable only where they "make the actual statements misleading"; it is not sufficient that an investor "consider the omitted information significant." *Id.*

Irrespective of whether Plaintiff alleges an omission or misstatement, an actionable representation must be material. "For the purposes of a 10b–5 claim, a misrepresentation or omission is material if there is a substantial likelihood that a reasonable investor would have acted differently if the misrepresentation had not been made or the truth had been disclosed." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

The parties group the challenged statements into six categories: (1) growth; (2) legal compliance; (3) competitive spirit; (4) ethical culture; (5) self-driving car technologies; and (6) data security. The Court addresses each of these categories.

### 1. Growth

The FAC identifies over a dozen statements made by Defendants that allegedly misled investors as to Uber's ability to grow sustainably. *See* Opp. at 23; FAC ¶¶ 24-26. The statements challenged in the FAC describe Uber's impressive growth rate in various terms. *See, e.g.*, FAC ¶ 24 (characterizing Uber's growth as "mostly unprecedented," "incredibly rare," "remarkable," and "gangbusters"). According to Plaintiff, these statements were misleading and/or misrepresented material facts insofar as Uber's growth was actually "built on a corporate culture of dishonesty and illegality." FAC ¶¶ 24, 27. The FAC then details these allegedly "undisclosed legal, reputational and operational risks," including Uber's (1) use of a "covert surveillance program code-named 'Greyball,'" "which often contravened local regulations"; (2) development of "a secret program code-named 'Hell' to monitor and steal driver and rider data from its main competitor, Lyft"; (3) misappropriation of technology from "Google's self-driving car affiliate

7

Waymo"; (4) disregard for "local laws and regulations" in other countries; (5) use of "a deficient security system that failed to protect" the personal data of Uber users; and (6) attempt "to discredit a sexual assault victim" and maintenance of "a hidden culture of institutionalized sexual harassment and discrimination." FAC ¶ 27. According to Plaintiff, Uber's failure to disclose these risky activities made Defendants' positive financial projections false and misleading.

Defendants' "growth" statements are not actionable false statements. As a threshold, the majority of the challenged statements are not objectively verifiable, and instead constitute puffery. *See* FAC ¶ 26 ("business is going gangbusters," "[t]his progress is remarkable," "our business remains healthy and resilient"); *Oregon Pub. Employees Ret. Fund*, 774 F.3d at 606 ("When valuing corporations, investors do not rely on vague statements of optimism like 'good,' 'well-regarded,' or other feel good monikers. This mildly optimistic, subjective assessment hardly amounts to a securities violation."); *In re Cornerstone Propane Partners, L.P.*, 355 F. Supp. 2d 1069, 1087 (N.D. Cal. 2005) ("Interpretation of the 'mere puffery' rule has distinguished cases of "'definitive positive projections' from statements projecting 'excellent results,' a 'blowout winner' product, 'significant sales gains,' and '10% to 30% growth rate over the next several years.' (citing *Grossman v. Novell, Inc.,* 120 F.3d 1112, 1119 (10th Cir. 1997))). For these opinion statements, Plaintiff fails to adequately allege, as it must, that "Defendants 'did not hold the belief [they] professed and that the belief is objectively untrue.'" *see Markette*, 2017 WL 4310759, at *5 (quoting *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech*., Inc., 856 F.3d 605, 616 (9th Cir. 2017)). For those growth projections that Plaintiff does not identify as facially incorrect, Plaintiff's allegations are inactionable as they merely restate "[a]ccurately reported historical information. *Fisher v. Acuson Corp.*, No. C93-20477RMW(EAI), 1995 WL 261439, at *9 (N.D. Cal. Apr. 26, 1995) ("E]ven when accompanied by highly positive forecasts, these accurate statements are not misleading because. . . reasonable investors know how to discount the optimism of corporate executives."). Plaintiff fails to plausibly suggest that Defendants' statements directly contradicted what they knew at the time, and were therefore false. *See Khoja*, 2018 WL 3826298, at *15.

Plaintiff's omission theory likewise fails. The Court agrees with Defendants that Uber was

not under a duty to disclose the "laundry list" of allegedly fraudulent activities that are unconnected to the actual challenged statements. *See* Uber Mot. at 10; Kalanick Mot. at 16-18; *see, e.g.*, FAC ¶ 27 ("Defendants failed to disclose that Uber's results and growth had been artificially inflated by illicit conduct, and that as a result of [D]efendants' illicit conduct Uber's prospects were subject to numerous material undisclosed legal, reputational and operational risks. . . ."). Put differently, the FAC fails to adequately link Defendants' representations with Plaintiff's underlying claims of illegal activity so as to show that omitting these alleged activities "affirmatively led the plaintiff in a wrong direction (rather than merely omitted to discuss certain matters)." *In re OmniVision Techs., Inc. Sec. Litig.*, 937 F. Supp. 2d 1090, 1101 (N.D. Cal. 2013); *see Markette*, 2017 WL 4310759, at *7. Other courts have rejected allegations as insufficient in analogous circumstances: that is, where "the reasons Plaintiffs offer as to why the statements are false or misleading bear no connection to the substance of the statements themselves." *See Jui-Yang Hong v. Extreme Networks, Inc.*, No. 15-CV-04883-BLF, 2017 WL 1508991, at *15 (N.D. Cal. Apr. 27, 2017).

      Plaintiff's failure to plausibly show falsity is symptomatic of its broad-brush approach to the pleadings. *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1071 (9th Cir. 2008) (holding that "[a] litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false, does not meet" the applicable standard). "In the context of securities class action complaints, courts have repeatedly lamented plaintiffs' counsels' tendency to place 'the burden [ ] on the reader to sort out the statements and match them with the corresponding adverse facts to solve the 'puzzle' of interpreting [the p]laintiffs' claims." *Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1244 (N.D. Cal. 1998) (quoting *In re Oak Technology Sec. Litig.,* 1997 WL 448168, *5 (N.D. Cal. July 1, 1997)); *Schuster v. Symmetricon, Inc.*, No. C9420024RMW, 2000 WL 33115909, at *2 n.2 (N.D. Cal. Aug. 1, 2000) ("This court has previously emphasized the need for clear statement-by-statement analysis in cases of securities fraud."). As in these cases, "[d]etermining whether the 'pleader is entitled to relief'" here "requires a laborious deconstruction and reconstruction of a great web of scattered, vague, redundant, and often irrelevant allegations" that other courts in this district have rejected as

9

unacceptable. *See, e.g.*, *Wenger*, 2 F. Supp. 2d at 1243 (collecting cases and dismissing the plaintiff's 65-page complaint which "thr[ew] the statements and the alleged 'true facts' together in an undifferentiated clump"); *Shankar v. Imperva, Inc.*, No. 14-CV-1680-PJH, 2015 WL 5530175, at *9 (N.D. Cal. Sept. 17, 2015) (granting the defendant's motion to dismiss due to the complaint's "lack of precision," concluding that "[w]hile plaintiff has identified some statements that could give rise to a viable claim... the complaint lumps those statements in with statements that are far too vague to be actionable... along with statements for which plaintiff has simply not provided enough facts to show that they are false or misleading"). The Court accordingly concludes that, as currently pled, Defendants' allegedly false or misleading growth statements fail "to conform with the presentation requirements" of Rules 8(a) and 9(b). *See Wenger*, 2 F. Supp. 2d at 1243.

### 2. Legal Compliance

The challenged statements in this category include representations by Kalanick and other corporate officers that: "I do pay attention to the rules"; "We are legal... According to the law"; "[A]s far as we could tell we were totally legal, White Glove legal"; "We go in when we're legal"; "[W]e work with regulators and cities to make things work." FAC ¶¶ 27-28, 30. Plaintiff claims that these representations were misleading statements and/or omissions in that they "conceal[ed] Uber's institutionalized practice of flouting rules whenever necessary to gain a competitive advantage." *Id.* ¶ 28. Again, Plaintiff cites as exemplary Uber's development of Greyball and Hell, and its violations of foreign law. *Id.* ¶ 32.

As with Defendants' growth statements, the legal compliance representations are not actionable. These statements merely express Defendants' desire to abide by laws and regulations. *See Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1278 (9th Cir. 2017) (holding that "transparently aspirational" statements promoting ethical conduct could not "reasonably suggest" that corporate officials would never violate the corporation's code of ethics, that the CEO personally complied with the code, or that the CEO would comply with the code in the future). As Defendants highlight, Plaintiff fails to allege that Kalanick or other Uber executives ever directly represented that programs like Hell or Greyball were, in fact, legal. *See* Kalanick Mot. at 18, Uber Mot. at 12. Furthermore, Plaintiff does not

assert that government officials have *in fact* found these programs are unlawful. As pled, the FAC therefore fails to plausibly suggest falsity, and Plaintiff's primary authorities can be distinguished on this basis. *See* Opp. at 28; *cf. Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 742 (9th Cir. 2008) (finding the plaintiff satisfied his pleading burden by showing that the defendant expressly "warranted that it was 'in compliance in all material respects with all laws,'" including Section 13(b) of the SEA, despite a cease and desist letter from the Securities and Exchange Commission finding specifically that the defendant had violated that section).

Plaintiff, for instance, relies on *In re Am. Apparel, Inc. S'holder Litig.* to show that it has adequately alleged falsity of corporate compliance statements. *See* 855 F. Supp. 2d 1043, 1068 (C.D. Cal. 2012). But that case is distinguishable. There, a California district court held that the plaintiffs adequately pled falsity as to the corporate defendant's compliance with immigration laws based on: (1) the defendant's concession that a federal investigation into its internal documents resulted in the termination of over 1,500 employees alleged to have been working without authorization in the United States; and (2) the company's statement on federal immigration filings, made just three months prior to the mass termination, that the company took "'diligent efforts to comply with all employment and labor regulations, including immigration laws' and that 'the Company's policy, and has been at all times, to fully comply with its obligations to establish the employment eligibility of prospective employees under immigration laws.'" *See id*. The court accordingly concluded that "[g]iven the extent of the company's noncompliance, and the fact that many of those discharged were long-term employees, it is a plausible inference that there were significant compliance problems at the time the statements were made." *Id.* at 1069.

Analogous facts are not before the Court. Plaintiff alleges only that Uber has acknowledged that certain programs existed—not that they were unlawful. *See* FAC ¶ 93 (recognizing that Uber's data security system had been compromised), ¶ 101 (alleging that Uber confirmed Greyball's existance). Plaintiff does not claim that law enforcement authorities have determined that, in fact, Uber broke the law by carrying out these activities. Rather, the FAC asserts that external investigations have occurred or are ongoing. *See* FAC ¶¶ 101-102 (alleging that Uber is the target of a criminal "probe" for use of Greyball), ¶ 107 (stating that Uber is under

11

federal investigation for development of Hell), ¶ 129 (providing statements from London's transport authority finding that Uber lacked "corporate responsibility" and that the city had declined to renew the company's operating license); Kalanick Mot. at 19 n.27. It is well-recognized that the existence of a regulatory investigation is itself insufficient to show cognizable fraud. *See Loos v. Immersion Corp.*, 762 F.3d 880, 890 & n.3 (9th Cir. 2014) (observing that an investigation "simply puts investors on notice of a potential future disclosure of fraudulent conduct"). Absent a "direct" connection between a corporation's statement and fraudulent activity, these statements are not actionable because any "individual who purchased the stock of a company that was later discovered to have broken any law could theoretically sue for fraud." *Gusinsky v. Barclays PLC*, 944 F. Supp. 2d 279, 289 & n. 74 (S.D.N.Y. 2013), *aff'd in part, vacated in part, remanded sub nom. Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227 (2d Cir. 2014) (finding insufficient allegations that the defendant misled investors by stating that its business "may not be conducted in accordance with applicable laws around the world").

To the extent that Plaintiff proceeds on an omissions theory, Plaintiff's claim fails for the same reason that its growth statements are not cognizable. In summary, the omission of any conduct then under investigation is disconnected from corporate statements regarding a *desire* to comply with applicable laws and regulations. Plaintiff has failed to plausibly suggest that Defendants' disclosure of programs like Greyball or Hell would have altered the total mix of information then available to investors given the nature of the challenged statements. *See Markette*, 2017 WL 4310759, at *7; *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (rejecting that there is a "freestanding completeness requirement" under the securities laws). Thus, as pled, Defendants' omission of this information did not violate the securities laws.

### 3. Self-Driving Cars and Data Security

Plaintiff also fails to plead actionable statements by Uber and Kalanick regarding Uber's development of self-driving cars and its data security programs Turning first to driverless cars, the allegedly material false or misleading statements include Kalanick's representations that Uber "needed to be at the vanguard in the development of self-driving car technologies," and that:

12

"autonomous vehicles were 'the way the world is going'"; driverless cars were an "'existential' requirement" for Uber's success; Uber had partnered with Carnegie Mellon and the University of Arizona to research self-driving cars; Uber had to be "creative" with regard to driverless car technology due to obstacles to its data collection; and Uber had invested millions into its pilot self-driving cars to "wean itself off dependence on Google Maps." FAC ¶¶ 34-38.

These statements are not actionable. Some of these statements are not alleged to be false (for instance, the existance of Uber's partnerships with universities). Others are merely "positive forecasts" of Uber's driverless car efforts. *See Fisher*, 1995 WL 261439, at *9. Uber was under "no duty to disclose" that "it was not meeting its internal goals" with respect to its autonomous vehicle program. *See id.* (citing *Basic, Inc. v. Levinson,* 485 U.S. 224, 239 n.17 (1988)); *Livid Holdings Ltd.*, 416 F.3d at 946. As with Defendants' other alleged omissions, Uber's positive projections for its driverless car program are disconnected from allegations regarding the actual misappropriation of autonomous car technology.

So too with Defendants' representations regarding data security. The challenged statements are premised on the factual allegation that, in May 2014, hackers stole the personal information of 50,000 Uber drivers. FAC ¶ 41. Following that event, Defendants stated that Uber: "closely monitored and audited" "rider and driver accounts. . . on an ongoing basis"; was "deeply committed to protecting the privacy and personal data of riders and drivers"; understood that it needed to treat rider data "carefully and with respect, protecting it from authorized access"; maintained a "strong" privacy program; "protect[ed] the personal information of riders"; and considered data protection a "core responsibility and company value." *Id.* ¶¶ 41-42. Plaintiff claims that these statements were misleading because, in October 2016, Uber suffered a "nearly identical breach" to the one experienced in May 2014. *Id.* ¶ 43. Uber allegedly made additional statements regarding enhanced security and privacy efforts that Plaintiff portrays as misleading when made between December 2016 and August 2017. *Id.* ¶ 44.

Defendants' data security representations are not actionable. Defendants' statements regarding the October 2016 breach occurred after Plaintiff last acquired its stock. *See* Kalanick Mot. at 19. Plaintiff does not allege that it retained its stock based on Defendants' data security

13

statements. *See Hanon*, 976 F.2d at 501. In addition, the pre-2016 data statements are not false or misleading merely because Uber suffered a different data attack despite efforts to protect driver and rider information. *See Markette*, 2017 WL 4310759, at *5; *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund*, 845 F.3d at 1275. Defendants never claimed that Uber would never again suffer a data breach, nor does Plaintiff suggest as much. In the absence of additional factual allegations showing that these statements were either false or misleading, Defendants' representations that they were protecting users' privacy are not actionable.

### 4. Ethical Culture and Competitive Spirit

The Court reaches a similar conclusion with regard to Defendants' statements regarding corporate culture, values, and Uber's pro-competition attitude. With regard to internal culture, the challenged statements include indications by Kalanick that he feels Uber is "honest and authentic" and "trustworthy" and that "how you [] approach your work should matter." *See* FAC ¶¶ 49-50. In addition, corporate representatives stated that Uber "offers [women] the chance to be entrepreneurial" and that "[f]or many women, Uber is a flexible, equitable opportunity." *Id.* ¶ 51.

As a threshold, none of the challenged statements are specifically linked to practices alleged to be unlawful (including for instance, institutionalized gender discrimination and misappropriation of other companies' technologies) in a way that plausibly suggests the representations are false or misleading. *See id.* ¶¶ 108-122 (alleging that systemic gender discrimination exists at Uber). That gender differences could have led to disparate treatment at Uber does not make statements regarding the benefits of employee diversity false or misleading under the securities laws. As to statements regarding the company's purported support for marketplace competition, these representations are inactionable puffery. *Id.* ¶¶ 46-47 (including representations by Kalanick that "competition is good"; "competition is fun"; "[c]ompetition makes us better"). That Kalanick may have separately advocated for "relaxed competitive restrictions" and accused Lyft of violating applicable regulations does not render his statements regarding compliance false or misleading. *Id.* ¶ 47; *see Retail Wholesale & Dep't Store Union Local 338 Ret. Fund*, 845 F.3d at 1275. Plaintiff also fails to plausibly suggest that disclosure of this information would have altered the total mix of information then available and material to

14

investors. The omission of unproven regulatory or statutory violations as pled here does not constitute an actionable omission.

### c. Loss Causation

Uber argues that Plaintiff fails to sufficiently plead loss causation. *See* Uber Mot. at 19-24. The Court agrees. The Ninth Circuit in *Loos* presented the standard:

> Broadly speaking, loss causation refers to the causal relationship between a material misrepresentation and the economic loss suffered by an investor. Ultimately, a securities fraud plaintiff must prove that the defendant's misrepresentation was a 'substantial cause' of his or her financial loss. At the pleading stage, however, the plaintiff need only allege that the decline in the defendant's stock price was proximately caused by a revelation of fraudulent activity rather than by changing market conditions, changing investor expectations, or other unrelated factors. In other words, the plaintiff must plausibly allege that the defendant's fraud was *revealed* to the market and *caused* the resulting losses.

*See* 762 F.3d at 887. As the *Loos* court also set forth, investigations of fraudulent activity standing alone are not sufficient to adequately allege loss causation. *See id.* at 890 & n.3. The majority of Defendants' alleged "fraudulent" conduct comprises practices that have not in fact been proven unlawful, but are instead currently under investigation. *See* FAC ¶¶ 101-102 (investigations of Greyball), ¶ 107(same for Hell).

More broadly, Plaintiff's failure to adequately plead loss causation is symptomatic of its failure to plead falsity. The FAC does not specifically tie any particular misrepresentation by Defendants to a decline in Uber's stock price. *See id.* ¶¶ 147-150. Rather, Plaintiff lumps together the above-discussed corporate "scandals," and asserts that this led to a devaluation of Uber's stock. *Id.* But this broad brush pleading style is insufficient under Rule 9(b). *See, e.g.*, *Metzler Inv. GMBH*, 540 F.3d at 1064 (holding that a plaintiff "cannot to plead loss causation through 'euphemism' and thereby avoid alleging the necessary connection between defendant's fraud and the actual loss"); *Wenger*, 2 F. Supp. 2d at 1244. Given the vague and attenuated connection between the cited disclosures of potential fraud and declines in the price of Uber's securities, Plaintiff's claims cannot proceed as pled.[4]

---

[4] Because the Court finds that Plaintiff fails to adequately plead false or misleading statements and omissions and loss causation, it does not address Defendants' other reasons to dismiss the

15

Notwithstanding the above discussed deficiencies, the Court cannot definitively say at this stage that Plaintiff could not state its claims with sufficient specificity. *See id.*; *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (allowing a court to grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts). The Court will therefore provide Plaintiff with an additional opportunity to amend its complaint.

**II. MOTIONS TO STAY**

Both Uber and Kalanick moved to stay discovery pending the Court's order on Defendants' motions to dismiss. The Court granted these motions on April 19, 2018. The Court explains its reasons for doing so in this order.

District courts have "wide discretion" to control discovery. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). In moving to stay discovery pending the Court's ruling on their motions to dismiss, Defendants largely repeat the substance of their dismissal motions. The Court is satisfied that discovery is appropriately stayed at this stage. Defendants' dismissal motions are potentially dispositive of this action. If the Court grants Defendants' motions without leave to amend, these cases would end in this Court. Allowing further discovery in the absence of a well-pleaded complaint also risks unnecessarily expending the resources of the Court and the parties. That rationale, which underlies the mandatory stay provision that applies to federal securities claims under the PSLRA, applies with equal force to Plaintiff's very similar state law securities claims. Likewise, the Court does not need further factual development to analyze the complaint's sufficiency. The Court accordingly also defers deciding whether to bifurcate discovery until this litigation advances beyond the pleading stage. *See* Uber Mot. 12-14.

//
//
//
//
//

---

amended complaint.

16

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motions **WITH LEAVE TO AMEND** and **GRANTS** Defendants' motions to stay discovery pending this order. Any amended complaint must include a statement-by-statement analysis of the allegedly actionable statements, and must be filed within 28 days of the date of this order.

**IT IS SO ORDERED.**

Dated: 8/31/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge