UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRVING FIREMEN'S RELIEF & RETIREMENT FUND,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, et al.,<br><br>Defendants. | Case No. 17-cv-05558-HSG<br><br>**ORDER GRANTING MOTIONS TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. Nos. 139, 141 |

Plaintiff Irving Firemen's Relief & Retirement Fund filed this putative class action on September 26, 2017, asserting one violation of California Corporations Code Sections 25400(d) and 25500 against Uber Technologies Inc. ("Uber") and Travis Kalanick, Uber's former Chief Executive Officer ("CEO") (collectively, "Defendants"). Dkt. No. 1. On December 22, 2017, Plaintiff filed a first amended complaint, asserting the same statutory violations. Dkt. No. 50 ("FAC"). The Court dismissed the first amended complaint with leave to amend, Dkt. No. 127 ("Order"), after which Plaintiff filed a second amended complaint, reasserting the same statutory violation, Dkt. No. 135 ("SAC").

Pending before the Court are Defendants' separately filed motions to dismiss the operative complaint, briefing for which is complete. *See* Dkt. Nos. 139 ("Kalanick Mot."), 141 ("Uber Mot."), 150 ("Opp."),[1] 158 ("Kalanick Reply"), 160 ("Uber Reply"). After carefully considering the parties' arguments, the Court **GRANTS** Defendants' motions **WITHOUT LEAVE TO AMEND**.

//

---

[1] Plaintiff filed an omnibus opposition to Defendants' separately filed motions.

## I. LEGAL STANDARD

### A. Rule 12(b)(6) Standard

Federal Rule of Civil Procedure ("Rule") 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

If the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal citations and quotation marks omitted). But "where the Plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad." *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (quotations and alteration omitted).

//

**B. Heightened Pleading Standards[2]**

Section 10(b) of the Securities Exchange Act of 1934 provides that it is unlawful "[t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered . . . any manipulative or deceptive device or contrivance." 15 U.S.C. § 78j(b). Under this section, the Securities and Exchange Commission promulgated Rule 10b-5, which makes it unlawful, among other things, "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b). To prevail on a claim for violations of either Section 10(b) or Rule 10b-5, a plaintiff must prove six elements: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148, 157 (2008).

"At the pleading stage, a complaint alleging claims under section 10(b) and Rule 10b-5 must not only meet the requirements of Rule 8, but must satisfy the heightened pleading requirements of both [Rule] 9(b) and the Private Securities Litigation Reform Act ('PSLRA')." *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012). Under Rule 9(b), claims alleging fraud are subject to a heightened pleading requirement, which requires that a party "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Additionally, all private securities fraud complaints are subject to the "more exacting pleading

---

[2] The parties do not dispute that the relevant heightened pleading standards apply. And although Plaintiff asserts a violation of California Corporations Code Sections 25400 and 25500, those sections are derived from substantively identical language in the Securities Exchange Act of 1934 ("SEA"). *See Kamen v. Lindly*, 114 Cal. Rptr. 2d 127, 202–03 (Ct. App. 2001). Thus "well settled" California law instructs that federal cases construing federal securities laws, including pleading requirements, are "persuasive authority when interpreting [California] law." *People v. Black*, 214 Cal. Rptr. 3d 402, 416 (Ct. App. 2017) (quoting *Viterbi v. Wasserman*, 123 Cal. Rptr. 3d 231, 239 (Ct. App. 2011)); *see also People v. Figeroa*, 715 P.2d 680, 688 n.14 (Cal. 1986) (In Bank) (explaining that decisions interpreting parallel provisions of federal securities laws "are helpful in resolving issues presented under the state law"). Both Defendants and Plaintiff again rely on cases interpreting Section 10(b) of the SEA, and the Court thus applies these heightened standards in assessing the SAC.

3

requirements" of the PSLRA, which require that the complaint plead with particularity both falsity and scienter. *Zucco Partners, LLC*, 552 F.3d at 990. With respect to forward-looking statements, "a defendant will not be liable for a false or misleading statement if it is forward-looking and *either* is accompanied by cautionary language *or* is made without actual knowledge that it is false or misleading." *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1141 (9th Cir. 2017) (citing *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112–13 (9th Cir. 2010)).

## II. DISCUSSION

Plaintiff defines the putative class to include "[a]ll persons or entities who, directly or indirectly, purchased or committed to purchase (and subsequently closed a binding commitment to purchase) an interest in Uber securities sold in the Company's Series D, E, F, or G offerings." SAC ¶ 206. As was true of prior iterations of the complaint, the gravamen of the operative complaint is that Uber and Kalanick disseminated false and misleading statements and omissions for the purpose of "induc[ing] the purchase of billions of dollars of [such] Uber securities." *Compare* FAC ¶ 2, *with* SAC ¶ 2.

Plaintiff again divides Defendants' allegedly fraudulent statements into six categories: (1) growth, SAC ¶¶ 130–45; (2) legal compliance, *id.* ¶¶ 38–64; (3) competition, *id.* ¶¶ 65–89; (4) ethical culture, *id.* ¶¶ 162–78; (5) self-driving car technologies, *id.* ¶¶ 146–61; and (6) data security, *id.* ¶¶ 90–129. Plaintiff claims that the value of Uber securities declined as Uber's various corporate scandals came to light, and class members consequently lost billions of dollars. *Id.* ¶¶ 179–205. And as was the case with respect to the first amended complaint, Defendants contend that the challenged statements are inactionable. Again, Kalanick's motion is limited to whether Plaintiff adequately alleges a misleading statement or omission. *See* Kalanick Mot. at 3–14. And again, Uber argues not only that Plaintiff fails to adequately plead cognizable false or misleading statements and omissions, but also that Plaintiff does not sufficiently plead loss causation, injury, and scienter. Uber Mot. at 6–21, 24–25.

As discussed in greater detail below, the second amended complaint adds little to the first amended complaint other than including statements contained in a confidential offering memorandum ("New Riders Offering Memorandum") that was circulated to prospective investors

4

in connection with the Series G offering. And as to these statements, a new threshold matter exists: Defendants contend that statements in the New Riders Offering Memorandum are inactionable because, among other reasons, Uber did not draft the offering memorandum and thus did not "make" any statements therein.[3] *See* Uber Mot. at 4–5. But the Court need not resolve whether these statements are fairly attributable to Uber because the statements are not actionable for other reasons, as discussed below.

### A. Materially False or Misleading Statements and Omissions

Defendants contend that, as the Court found with respect to the first amended complaint, the statements challenged in the second amended complaint are not materially false or misleading. To survive this ground for dismissal, Plaintiff must "identify[] the statements at issue and set[] forth what is false or misleading about the statement and why the statements were false or misleading at the time they were made." *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012).

With regard to falsity, that element is alleged "when a plaintiff points to [the] defendant's statements that directly contradict what the defendant knew at that time." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018). "A statement is misleading if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists." *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1275 (9th Cir. 2017) (quotations and alterations omitted). Misleading statements "must be 'capable of objective verification.'" *Id.* (quoting *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014)). "For example, 'puffing'— expressing an opinion rather than a knowingly false statement of fact—is not misleading." *Id.*

---

[3] Uber also objected to what it perceived as Plaintiff continuing to characterize statements made outside of the class period as actionable. Uber Mot. at 2–3. But of the twelve statements to which Uber objected in its motion, Plaintiff responds that (1) ten of the statements were not meant to be actionable misrepresentations, but rather, "to show relevant context that bears on the falsity and materiality of the statements on which Plaintiff's claims are based," *see* Opp. at 3 (citing SAC ¶¶ 47, 137, 140); (2) one "should not have been included as an actionable misrepresentation, *id.* (citing SAC ¶ 167(f)); and (3) the last was "just ***three days*** before the start of the period defendants acknowledge is relevant," and thus should remain an actionable statement, *id.* at 3–4 (citing SAC ¶ 74). It appears the parties do not dispute that the Court may consider the last statement, as Uber's reply abandoned any challenge to its consideration.

5

"Even if a statement is not false, it may be misleading if it omits material information." *Khoja*, 899 F.3d at 1008–09. "An omission is material when there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information available." *Markette v. XOMA Corp.*, No. 15-cv-03425-HSG, 2017 WL 4310759, at *7 (N.D. Cal. Sept. 28, 2017) (internal quotation marks omitted). Omissions are actionable only where they "make the actual statements misleading"; it is not sufficient that an investor merely "would consider the omitted information significant." *Id.* And irrespective of whether Plaintiff alleges an omission or misstatement, an actionable representation must be material. "For the purposes of a 10b–5 claim, a misrepresentation or omission is material if there is a substantial likelihood that a reasonable investor would have acted differently if the misrepresentation had not been made or the truth had been disclosed." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

As noted above, the challenged statements are again susceptible to grouping into six categories: (1) growth; (2) legal compliance; (3) competitive spirit; (4) ethical culture; (5) self-driving car technologies; and (6) data security.

### 1. Growth

The second amended complaint largely repeats statements that the Court previously found were "not actionable false statements," in part, because they were mere puffery or accurate reports of historical information. Order at 7–8. The Court also held that Plaintiff's omission theory failed because Uber was not under a duty to disclose a "laundry list" of allegedly fraudulent activities that are unconnected to the actual challenged statements." *Id.* at 8–9. The Court added that "the FAC fail[ed] to adequately link Defendants' representations with Plaintiff's underlying claims of illegal activity so as to show that omitting these alleged activities 'affirmatively led the plaintiff in a wrong direction (rather than merely omitted to discuss certain matters).'" *Id.* at 9 (quoting *OmniVision Techs., Inc. Sec. Litig.*, 937 F. Supp. 2d 1090, 1101 (N.D. Cal. 2013)).

Aside from statements in the New Riders Offering Memorandum, Plaintiff puts forward two new "growth" statements in the operative complaint: (1) Kalanick remarked in June 2014 that

6

"our size and our growth . . . meet[] the numbers that people are putting out there for . . . our stock," SAC ¶ 141(a); and (2) Kalanick remarked in June 2015 that, "[T]hose original hundred friends and ten drivers have become tens of millions of people in 300 cities across six continents. Every single month, Uber is adding hundreds of thousands of drivers around the world. Already, there are over 26,000 drivers in New York, 15,000 drivers in London, 10,000 in Paris, and 42,000 in Chengdu, China, and 22,000 of course here in San Francisco," *id.* ¶ 141(e). Uber contends that these comments "are just more of the same," as Plaintiff neither disputes the reported numbers' accuracy nor alleges that Kalanick did not believe his statements about Uber's growth when they were made. Uber Mot. at 13.

Plaintiff responds that the operative complaint has cured the missing link that doomed the first amended complaint. And Plaintiff's purported link is to tether the statements about growth to a reputational risk disclosure in the New Riders Offering Memorandum. Opp. at 27–28 ("The connection between growth and reputation, pled in detail in the SAC, provides the link that the Court found missing from the FAC."), 28 n.31 (arguing that this "risk disclosure, which was not pled in the prior complaint, explains the link between Uber's growth and its reputation"). But Plaintiff's reliance on the New Riders Offering Memorandum proves too much. All the memorandum states on this subject is that Uber's reputation and business may be harmed by negative publicity, which Plaintiff pleads was misleading for failing to disclose "the existence of events that had *already* occurred." SAC ¶¶ 131–32. But such a generic statement does not give rise to a duty to disclose Plaintiff's purported laundry list of possible reputational harms. As Uber notes in its reply, to hold otherwise would improperly render every company "liable to every investor for every act that . . . harmed reputation," whenever it acknowledges the prospects of future reputational risks. Uber Reply at 11 (quoting *Gusinsky v. Barclays PLC*, 944 F. Supp. 2d 279, 290 (S.D.N.Y. 2013)). The Court agrees.

### 2. Legal Compliance

Aside from statements in the New Riders Offering Memorandum, the operative complaint presents only one new alleged misrepresentation regarding legal compliance: Kalanick's statement that:

7

> We've now launched in 130 cities, and there's only one product in one city that we ever backed out of: Vancouver. . . . There are flare-ups, the taxi industry will put pressure on a city government to stifle competition and then that's when Nairi [an Uber spokeswoman] and I are up late. . . . In the win column we have 130 and in the loss column we have one. So yes, these are battles but we we've lost one battle out of many.

SAC ¶ 43(a). Plaintiff does not argue that this statement was false, but contends that it—like other statements about legal compliance—was misleading because the statement portrays Uber as addressing legal requirements when in fact it was evading them. Opp. at 13. This statement is no different, however, from those previously found inactionable, *See* Order at 10–12 (addressing statements such as "We are legal. . . According to the law"). And Plaintiff otherwise has presented no new persuasive argument for the Court to change its prior ruling.

Statements in the New Riders Offering Memorandum fare no better. For example, Plaintiff points to generic statements about the risks of FCPA violations as purportedly misleading for failing to disclose that "Uber was then engaging in activities proscribed by the FCPA." FAC ¶ 63. But Plaintiff here ignores the Court's prior holding that "[t]he omission of unproven regulatory or statutory violations as pled here does not constitute an actionable omission." *See* Order at 15. In other words, generic statements about FCPA risks are not material omissions based on unproven subsequent allegations of FCPA violations.

### 3. Competition, Self-Driving Cars, Ethical Culture

Aside from statements in the New Riders Offering Memorandum, the operative complaint includes no new alleged misrepresentations concerning Defendants' development of self-driving cars or corporate culture. Plaintiff instead opposes dismissal this time on the grounds that, like the alleged misrepresentations about growth, Defendants' "efforts to steal self-driving technology" and "concealment of a corporate culture of sexual harassment and misogyny" rendered risk disclosures in the New Riders Offering Memorandum misleading. Opp. at 28–30. As the Court concluded for the statements about growth, Plaintiff's purported link fails as a matter of law. As to self-driving cars, the memorandum merely contains generic statements about risks to Uber's own intellectual property rights or risks that the company may not manage its growth properly. SAC ¶¶ 148–49. But these statements make no representation whatsoever about Uber's practices

8

and whether it might be accused of such wrongdoing against competitors. As to corporate culture, Plaintiff's link is another generic statement, this time about how growth could suffer if Uber struggles to attract or retain qualified personnel, which Plaintiff proposes is connected to undisclosed risks of sexual harassment and misogyny. *See id.* ¶¶ 163–64. But again, such generic statements make no representation about sexual harassment or gender discrimination, and Plaintiff again fails to plead the requisite nexus with the allegedly unlawful practices so as to "suggest[] the representations are false or misleading." *See* Order at 14.

As to alleged misrepresentations regarding competition, Plaintiff once more opposes dismissal because risk disclosures in the New Riders Offering Memorandum were purportedly misleading. Opp. at 18–19. But again, Plaintiff's purported link fails as a matter of law, here because the memorandum merely contains generic statements related to Uber's success "depend[ing] on its ability to attract both drivers and riders." SAC ¶ 66. But nothing about the memorandum's generic statements relates to how Uber purportedly competes for drivers and/or riders.

The operative complaint then adds several other alleged misrepresentations concerning competition which Plaintiff contends are actionable. Specifically, Plaintiff argues that while Defendants were "asserting that Uber had not and would not stoop to [unfair competitive] tactics," Uber was in fact engaging in such behavior. *Id.* at 20. But Plaintiff here fails to account for one of the Court's primary bases for finding Defendant's competition statements inactionable as alleged in the first amended complaint: "The omission of unproven regulatory or statutory violations as pled here does not constitute an actionable omission." *See* Order at 15. Perhaps to sidestep this problem, Plaintiff argues that illegality is not required to establish falsity. Opp. at 21. But this misses the point. Plaintiff's theory is that Defendants misled investors by criticizing others' marketing tactics, when its own were just as nefarious. But that connection is far too tenuous to support an omission theory of liability. Following Plaintiff's logic, any less-than-perfectly-lawful company that criticizes any other company is subject to liability for securities fraud. Plaintiff cites to no case to support this position, and the Court declines to adopt this unsupported theory.

#### 4. Data Security

Aside from statements in the New Riders Offering Memorandum, the operative complaint presents only one new alleged misrepresentation regarding data security, Uber's statement on its website that: "Uber has a strict policy prohibiting all employees at every level from accessing a rider or driver's data. The only exception to this policy is for a limited set of legitimate business purposes. Our policy has been communicated to all employees and contractors." SAC ¶ 100. This statement, however, is completely unrelated to Uber's allegedly undisclosed 2014 data breach, aside from loosely pertaining to customer data.

Plaintiff also argues that the operative complaint advances a different theory of liability not foreclosed by the Court's prior order: "that investors were misled because defendants deliberately delayed disclosing the 2014 data breach and then lied about what they had done to correct the security weaknesses that caused it." Opp. at 22. But that slight repackaging does not change that the Court already found Plaintiff's other allegedly misleading statements were puffery. *See* Order at 13–14. That finding is equally true here.

Turning finally to the New Riders Offering Memorandum, Plaintiff contends that "warnings of the risks of further data breaches," including that Uber may not be able to prevent them, misled investors by "omitting to disclose that [Uber] had failed to address or correct the conditions that had led to the 2014 data breach." SAC ¶¶ 91–92. And "warning[s] about the risk of negative publicity as a result of data privacy breaches" were purportedly misleading for the same reason. *Id.* ¶¶ 93–95. But these statements in no way represented to investors what steps or measures Uber may have taken to correct past weaknesses, such that its failure to discuss shortcomings were material omissions. Based on this lack of connection, the Court finds Plaintiff again fails to plead the requisite link to suggest the alleged representations were false or misleading.

### B. Loss Causation

The Court previously held:

> Plaintiff's failure to adequately plead loss causation is symptomatic of its failure to plead falsity. The FAC does not specifically tie any particular misrepresentation by Defendants to a decline in Uber's

10

> stock price. Rather, Plaintiff lumps together the above-discussed corporate "scandals," and asserts that this led to a devaluation of Uber's stock. But this broad brush pleading is insufficient under Rule 9(b).

Order at 15 (internal citations omitted). And the Ninth Circuit has stated the loss causation standard as follows:

> Loss causation is shorthand for the requirement that investors must demonstrate that the defendant's deceptive conduct caused their claimed economic loss. Thus, like a plaintiff claiming deceit at common law, the plaintiff in a securities fraud action must demonstrate that an economic loss was caused by the defendant's misrepresentations, rather than some intervening event.

*See Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209 (9th Cir. 2016) (internal quotation marks and citations omitted). As the *Lloyd* court set forth, announcements of investigations of fraudulent activity alone are insufficient to adequately allege loss causation. *See id.* at 1209–10; *see also Loos v. Immersion Corp.*, 792 F.3d 880, 890 & n.3 (observing that an investigation "simply puts investors on notice of a *potential* future disclosure of fraudulent conduct").

The second amended complaint commits nearly thirty paragraphs to detail a theory of loss causation, which broadly provides that "[h]ad the true state of Uber's business been known, investors would have adjusted their valuation of Uber to reflect: (1) reduced cash flows; (2) higher risks; and (3) IPO timing delays." SAC ¶ 180. But the operative complaint then lumps all of Defendants' misconduct together and proposes a laundry list of purported consequences. And among Plaintiff's allegations is a chart detailing how various funds responded to the purported "revelations" between October 2016 and February 2018. *Id.* ¶ 198. This chart, however, shows that every fund maintained or increased its valuation after the alleged revelations of "Susan Fowler Blog post," "Waymo sues Uber," and "News of Greyball Program breaks." *Id.* And the majority of funds maintained or increased their valuation after the alleged revelations of "News of Hell Program breaks," and "CEO Travis Kalanick Resigns." *Id.*

Plaintiff defends its funds chart by arguing that mutual funds "typically do not[] re-value investments in privately-held companies on a daily basis, or immediately write down (or increase) their investment values as soon as public information reveals something new about such investments." Opp. at 39. "Rather," in Plaintiff's view, funds "revalue their investments as

11

circumstances require and information permits." *Id.* But even if the Court were to find that these fund valuations do not definitively contradict the claim that certain "revelations" materially depressed Uber's valuation, their inclusion in the operative complaint at a minimum magnifies Plaintiff's general failure to tie particular misrepresentations to a decline in Uber's value. Plaintiff continues to plead that an amalgam of misrepresentations decreased Uber's value over time, and yet Plaintiff's pleaded facts demonstrate that at least several of those had little or no effect. And Plaintiff's contention that mutual funds merely "revalue their investments as circumstances require and information permits," is precisely the point. *See id.* These funds—according to Plaintiff— had certain purportedly relevant information—again, according to Plaintiff—and did not revalue their investment.

Accordingly, the Court finds that Plaintiff has again failed to plead loss causation.

### III. CONCLUSION

For the foregoing reasons, the Court finds Plaintiff has failed to plead (1) materially false or misleading statements and omissions, and (2) loss causation.[4] And because "Plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity," the Court finds that leave to amend is unwarranted. *See Zucco Partners, LLC*, 552 F.3d at 1007. Accordingly, the Court **GRANTS** Defendants' motions to dismiss **WITHOUT LEAVE TO AMEND**. The clerk is directed to close the file.

**IT IS SO ORDERED.**

Dated: 7/31/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[4] Because the Court finds Plaintiff failed to plead these independently necessary requirements, the Court need not consider whether Plaintiff adequately pleaded injury or scienter.

12